## UNITED STATES ex rel. McGRATH et al. v. MATHUES, U. S. Marshal.

(District Court, E. D. Pennsylvania. January 30, 1925.)

I. Criminal law ⬅⮞242(7)—Offer of proof in removal proceedings held properly refused.

Where one of several individual defendants charged with violation of Sherman Anti-Trust Act (Comp. St. §§ 8820–8823, 8827–8830) and Clayton Act, § 14 (Comp. St. § 8835m), in removal proceedings offered to prove that neither he nor company of which he was alleged to be controlling officer and agent had ever done business in district to which removal was sought, held, offer was properly refused, since, if proved, it would not have rebutted charge of indictment.

2. Criminal law ⬅⮞242(5)—Indictment in removal proceedings is prima facie proof of facts stated therein, but not of probable cause.

In removal proceedings, under Rev. St. § 1014 (Comp. St. § 1674), certified copy of indictment is prima facie proof of facts stated therein, but is not prima facie proof of probable cause.

3. Criminal law ⬅⮞242(7)—In removal proceedings, defendant has right to offer evidence in rebuttal of prima facie case established by indictment.

In removal proceedings, defendant has right to offer evidence in rebuttal of prima facie case established by indictment.

4. Criminal law ⬅⮞242(8)—Where doubtful questions of law or fact arise in removal proceedings, warrant should issue and trial of such question be had before jury.

In removal proceedings, under Rev. St. § 1014 (Comp. St. § 1674), where prima facie showing made by state and defendant's evidence in rebuttal raises a doubtful question of law or an issue of fact, it should be tried by a jury and

warrant should issue, though, where averments of indictment are overcome by proof so clear and convincing as to leave no reasonable room for doubt, removal should be refused.

**5. Criminal law ⊜242(4)—Indictment held to sufficiently charge offense against United States to warrant removal.**

In removal proceedings, under Rev. St. § 1014 (Comp. St. § 1674), indictment charging combination to eliminate competition by fixing of noncompetitive price, allotment of customers, and refraining from competing for any customer allotted to another member, *held* to sufficiently charge a violation of Sherman Anti-Trust Act (Comp. St. §§ 8820–8823, 8827–8830), constituting offense against United States.

**6. Criminal law ⊜242(4)—Indictment under Sherman Anti-Trust Act held to sufficiently charge individual defendants with participation in alleged illegal combination to warrant their removal.**

Indictment of 50 corporations and like number of individuals for violation of Sherman Anti-Trust Act (Comp. St. §§ 8820–8823, 8827–8830) and Clayton Act, § 14 (Comp. St. § 8835m), *held* to sufficiently charge individual defendants with participation in alleged combination or in illegal acts to warrant their removal, under Rev. St. § 1014 (Comp. St. § 1674).

**7. Criminal law ⊜242(6)—Whether indictment showed jurisdiction of court to which removal was sought held such doubtful question as should be decided by trial court.**

Whether indictment of corporations and individuals for violation of Sherman Anti-Trust Act (Comp. St. §§ 8820–8823, 8827–8830) and Clayton Act, § 14 (Comp. St. § 8835m), sufficiently showed jurisdiction of court of district to which removal was sought, *held* such doubtful question as should be left to determination of trial court, rather than resolved in removal proceedings.

**8. Criminal law ⊜242(4)—Indictment sufficient as a pleading on demurrer or motion to quash cannot be held insufficient to warrant removal.**

Indictment sufficient as a pleading on demurrer or motion to quash cannot be *held* insufficient to warrant removal, in proceedings under Rev. St. § 1014 (Comp. St. § 1674).

**9. Criminal law ⊜242(6)—Decision of trial judge overruling demurrer to indictment is not binding on court of another district in removal proceedings, though entitled to great weight.**

Decision of trial judge overruling demurrer to indictment is not binding on court of another district in removal proceedings, though entitled to great weight.

**10. Habeas corpus ⊜3—Defendants, failing to introduce proof in rebuttal of government's prima facie showing in removal proceedings, held not entitled to first establish facts entitling them to discharge in subsequent habeas corpus proceedings.**

In removal proceedings, under Rev. St. § 1014 (Comp. St. § 1674), where defendants on hearing before commissioner introduced no evidence in rebuttal of prima facie showing made by government's proof of indictment, they were not entitled in subsequent habeas corpus proceedings to aver and prove for first time facts which, if seasonably and clearly proved, would have entitled them to discharge.

**11. Criminal law ⊜242(8)—In removal proceedings court has considerable discretion as to procedure and extent of inquiry.**

In removal proceedings, under Rev. St. § 1014 (Comp. St. § 1674), District Court has considerable discretion as to procedure and extent of inquiry.

**12. Criminal law ⊜242(8)—Offer to prove that defendant's health was such that removal would place his life in jeopardy was such that court should hear before ordering removal.**

Where commissioner in removal proceedings rejected offer of one defendant to prove that his physical condition was such that removal would place his life in jeopardy, *held*, court, before issuing warrant for removal, should hear such offer of proof, regardless of whether or not commissioner was right in rejecting it.

Habeas Corpus. On petitions by the United States, on the relation of Louis J. McGrath, of A. E. Shaw, of Edwin C. Donaghy, and of H. Lloyd Hess, for writs of habeas corpus to be directed to W. Frank Mathues, United States Marshal, and on petitions for warrants of removal of Louis J. McGrath and others. Petitions for writs of habeas corpus dismissed, and warrants of removal authorized as to all except the defendant McGrath, as to whom action is postponed pending hearing of further evidence.

John J. Sullivan, of Philadelphia, Pa., for relator McGrath.

Duane, Morris & Hechscher, of Philadelphia, Pa., for relators Shaw and Donaghy.

John M. Groff, of Lancaster, Pa., for relator Hess.

McKEEHAN, District Judge. On March 27, 1924, a grand jury impaneled in the United States District Court for the Eastern Division of the Northern District of Ohio returned an indictment against about 50 corporations and a like number of individuals, including the relators, charging them with having engaged in an illegal combination in restraint of interstate commerce in malleable iron castings. The four relators, who are residents of this district, were brought before one of the United States commissioners upon warrants duly applied for and issued by him. At the hearing, the government offered in evidence a certified copy of the indictment, identified the four defendants, and rested.

[1] One of the defendants then offered to prove that neither he nor the company of which he is alleged to be a controlling officer and agent had ever done business in the Northern district of Ohio. This offer was refused by the commissioner as being irrelevant, and I think the ruling correct, as the offer, if proved, would not have rebutted the charge of the indictment. No other offers of proof were made, and the commissioner held each of the defendants under $5,000 bail, pending an application to this court for warrants of removal. The cases are before the court on the government's petitions for warrants of removal and on the relators' petitions for writs of habeas corpus.

[2] The principles regulating the nature and scope of proceedings under section 1014 of the Revised Statutes (Comp. St. §. 1674) for the arrest and removal to another district of persons charged with having committed crimes in such district have been so frequently examined and explained as to render any extended discussion of them superfluous. It is clearly settled that a certified copy of the indictment offered in evidence is to be taken as prima facie proof of the facts stated therein. It is sometimes said that the indictment itself is prima facie proof of probable cause, but this is inaccurate. Beavers v. Henkel, 194 U. S. 73, 24 S. Ct. 605, 48 L. Ed. 882, lends some color to the statement; the reasoning of the opinion in that case being that, as the Fifth Amendment to the Constitution requires the indictment of a grand jury in all capital or otherwise infamous crimes, and as the finding of such an indictment is necessarily preceded by inquiry as to probable cause, the fact that an indictment has been so found is of itself proof of probable cause. Said Judge Brewer: "But the Constitution does not require two such inquiries and adjudications. The government, having once satisfied the provision for an inquiry and obtained an adjudication by the proper tribunal of the existence of probable cause, ought to be able without further litigation concerning that fact to bring the party charged into court for trial. * * * Within the spirit of the rule of giving full effect to the records and judicial proceedings of other courts, an indictment, found by the proper grand jury, should be accepted everywhere throughout the United States as at least prima facie evidence of the existence of probable cause."

This reasoning, however, has never been followed. On the contrary, it has been repeatedly laid down in a long line of cases that the duties of a District Judge, under section 1014 of the Revised Statutes, are not ministerial, but judicial, and that, before issuing a warrant for a defendant's removal, he must examine the indictment, regardless of whether the defendant has offered any testimony in rebuttal, and satisfy himself of three things: First, that an offense against the United States is charged; second, that the court to which removal is sought has jurisdiction of the offense; third, that there is probable cause for belief that the defendant committed the offense of which he is charged. As to all of these matters, however, doubtful or disputed questions, whether of fact or of law, are not to be resolved upon an application for a warrant of removal. They belong to the trial court, subject to the defendant's right to a subsequent review. For instance, the constitutionality of a statute making a given act a crime is not to be decided in a proceeding for removal. And if there is a close question whether the indictment charges the offense with sufficient particularity as to time, place, and circumstance, it is not to be decided in a removal proceeding, providing the indictment states facts which, taken as true, inform the defendant of what he is accused and constitute probable cause for believing that he committed such offense.

[3, 4] Close and nice questions as to jurisdiction are to be left to the decision of the trial court. On the other hand, if the facts averred in the indictment, taken as true, obviously and palpably fail to establish all or any of the three elements above referred to, it is the duty of the court, irrespective of whether any evidence is offered by the defendant, to refuse the warrant. Again, the averments contained in the indictment are merely prima facie evidence, and the defendant has the right to offer evidence in rebuttal. Where the net result is to raise a doubtful question of law, or an issue of fact that should be tried by a jury, the warrant should issue; but, where the averments of the indictment on any of the three essential elements are overcome by rebuttal proof so clear and convincing as to leave no reasonable room for doubt, the removal should be refused. Greene v. Henkel, 183 U. S. 249, 22 S. Ct. 218, 46 L. Ed. 177; Haas v. Henkel, 216 U. S. 462, 30 S. Ct. 249, 54 L. Ed. 569, 17 Ann. Cas. 1112; Henry v. Henkel, 235 U. S. 219, 35 S. Ct. 54, 59 L. Ed. 203; Tinsley v. Treat, 205 U. S. 20, 27 S. Ct. 430, 51 L. Ed. 689; Benson v. Henkel, 198 U. S. 1, 25 S. Ct. 569, 49 L. Ed. 919.

With these principles in mind, let us turn to the indictment. It consists of six para-

graphs, which may be summarized as follows:

(1) That from January, 1917, to the date of the indictment, the defendant corporations have manufactured approximately 75 per cent. of all the malleable iron castings made in this country and have sold them to purchasers in states other than the state or states of manufacture; that many of them have shipped such castings from states other than Ohio to purchasers in the Eastern division of the Northern district of Ohio, and have thus "carried on trade and commerce among the several states."

(2) That throughout said period the defendant corporations, respectively, "have had divers officers and agents, who have been active in the management, direction, and control of their affairs and business, and of their said interstate trade and commerce," and that the individual defendants are such "officers and agents."

(3) That throughout said period the defendant Robert E. Belt has been secretary of the American Malleable Castings Association, a trade organization of which each defendant corporation has been a member, and by means of which "the unlawful combination hereinafter more fully described has been largely carried out."

(4) That throughout said period the defendant corporations, the individual defendants, and Robert E. Belt, within said Eastern division of the Northern district of Ohio have knowingly and willfully engaged in a combination in restraint of their interstate trade in malleable iron castings; i. e., in a combination which has unlawfully restrained said trade and commerce in the manner hereinafter set forth.

(5) That throughout said period the defendant corporations "under said management, direction, and control of their said officers and agents, namely, the individual defendants," and with such participation of said Castings Association and said Belt, have carried on said interstate commerce in malleable iron castings under an agreement between said corporations "to eliminate competition among themselves as to prices, terms, and conditions of sale, and as to customers, and, by agreement, have from time to time fixed excessive and noncompetitive prices to be charged by all of them for said castings, and have accordingly quoted prices and made sales of said castings at the prices so fixed, and have assigned and allotted their customers to one another, to be held as exclusive customers, and have enforced such assignments, by refraining directly or indirectly from competing for customers so assigned."

(6) That as a means of securing compliance with said agreement by each defendant corporation, said defendant corporations have maintained said Castings Association, with headquarters at Cleveland, Ohio, in said division and district, and have, inter alia, required the association to collect from and distribute to all the members information as to the details of each member's business, for use in preventing breaches of said agreement.

[5] It is urged, for one thing, that this indictment merely follows the broad language of the Sherman Act, which describes an offense only in generic terms, and that it fails to descend to particulars and describe a specific offense. If this is so, the indictment is insufficient. But is it so? After reciting that the defendant corporations have been engaged in interstate commerce in malleable iron castings, and that they have entered into a combination in restraint of said trade, the indictment in paragraphs 5 and 6 becomes specific, and charges that the defendants have carried on that commerce under an agreement to eliminate competition among themselves as to prices, terms of sale, and customers, and that by agreement they have from time to time fixed noncompetitive prices to be charged by all of them, have sold their product at the prices so fixed, have allotted their customers to one another to be held as exclusive customers, and have enforced such allotment by refraining from competing for customers so allotted. Paragraph 6 adds that, as a means of securing compliance with the foregoing arrangement, the defendant corporations have maintained an association with headquarters at Cleveland, Ohio, and have required this association to collect from and distribute among the members detailed information as to each member's business, for use in checking up and preventing breaches of the arrangement.

It seems, too, that this indictment descends to particulars and charges a specific illegal combination. Counsel argue that the indictment does not show that the restraint of trade was "undue or unreasonable" within the rule of the Standard Oil Co. Case, 221 U. S. 1, 31 S. Ct. 502, 55 L. Ed. 619, 34 L. R. A. (N. S.) 834, Ann. Cas. 1912D, 734. But an indictment that charges a combination to eliminate competition by the fixing of a noncompetitive price to be charged by all, an allotment of customers, and a refraining from competing for any customer allotted to another, is not open to this criticism.

[6] It is further urged that the indictment does not sufficiently charge the individual defendants with participation in the alleged combination or in any of the alleged illegal acts. The theory of the indictment is, of course, that the individual defendants are guilty because the illegal combination formed by the corporate defendants was formed under their direction and control. Sherman Anti-Trust Act, § 1 (Comp. St. § 8820), denounces "every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce among the several states or with foreign nations." Section 14 of Act Oct. 15, 1914, known as the Clayton Act (Comp. St. § 8835m), sought to reach the individuals who were responsible for combinations entered into by corporations in restraint of interstate commerce. It provides that "whenever a corporation shall violate any of the penal provisions of the anti-trust laws, such violation shall be deemed to be also that of the individual directors, officers, or agents of such corporation who shall have authorized, ordered, or done any of the acts constituting in whole or in part such violation."

Counsel for the various defendants reiterate time and again throughout their briefs that the indictment does not aver participation by the individual defendants. But turn to the indictment: It specifically avers that the defendant corporations "have had divers officers and agents who have been active in the management, direction, and control of their affairs and business, and of their said interstate trade and commerce," and that the individual defendants are "such officers and agents"; that the defendant corporations, "under said management, direction, and control of their said officers and agents, namely, the individual defendants," have carried on said interstate commerce under an agreement to eliminate competition among themselves as to prices, terms of sale, and customers, and by agreement have fixed noncompetitive prices to be charged by all, have sold their product at the prices so fixed, have allotted customers, and have refrained from competing for customers so allotted.

As to the part played by the so-called Castings Association in the alleged combination, the indictment does not, it is true, aver that any individual defendant was a member of the association. But it avers that the defendant corporations were members of it, and that it was one of the means for carrying out the unlawful combination. It avers that the defendant corporations, the individual defendants, and Belt, the secretary of the association, together engaged in the illegal combination; that the defendant corporations, acting under the direction of the individual defendants and with the participation of the association, formed and carried out the combination described in paragraph 5, and specified finally in paragraph 6, the particular role played by the association in the alleged illegal combination. True, the indictment does not aver any single act committed by any single individual defendant. But it does aver an agreement between all of the defendant corporations to eliminate competition among themselves as to prices, terms of sale, and customers, avers acts done by them in furtherance of said agreement, and avers that the agreement was made and the acts committed by the defendant corporations under the management, direction, and control of the individual defendants.

[7] Finally, it is urged by counsel for the relator Hess that the indictment states no facts showing jurisdiction in the District Court for the Northern District of Ohio. The argument is that the indictment nowhere states that the agreement to which it refers was entered into in that district; that the commission of one or more overt acts in that district could not confer jurisdiction, since an overt act is not a necessary part of an illegal combination under the Sherman Act; and that even if jurisdiction is so conferred, the only statement on this point in the indictment is that the Castings Association, of which the defendant corporations were members, maintained its headquarters at Cleveland, and that the defendant corporations have "required" it to collect and distribute information, without any averment that it ever did collect or distribute any information, or that it actually performed any act whatever in connection with carrying out the agreement. On this question, the learned Judge of the District Court for the Northern District of Ohio (6 F.[2d] 40), in overruling a number of demurrers to this indictment and motions to quash, said:

"Upon the allegations of the indictment, the combination or conspiracy has been and is being maintained and carried on in part within this district, and some of the individual and corporate defendants are inhabitants of and have been found within the district. It is fundamental in the law of criminal conspiracy that all the members of a combination or conspiracy may be prosecuted in any district within which the conspiracy is formed or in part carried on, or within which an overt act has been committed in furtherance thereof by any one of the sever-

al conspirators. These fundamental principles of the law of criminal conspiracy are equally applicable to a criminal combination or conspiracy under section 1 of the Sherman Act. Upon these fundamental principles, the Northern district of Ohio becomes the proper jurisdiction within which any and all of the conspirators may be indicted and tried."

I think there is force in the criticism leveled against the averments of this indictment as to jurisdiction, and I confess to some doubt as to the sufficiency of the indictment in this respect. It is probably insufficient, unless the learned judge of the trial court is correct in thinking that the rule which confers jurisdiction in conspiracy cases upon the court of any district in which an overt act is committed applies to prosecutions under the Sherman Act (a point which appears not to have been heretofore decided), and unless this indictment charges the actual commission of an overt act in the Northern district of Ohio. The general averment in paragraph 3 that the combination was "largely carried out" by means of the Castings Association is too vague to mean anything, the averment in paragraph 5 that the agreement was made and carried out "with such participation of said association" adds nothing until one knows what is meant by "such participation," and the only participation specified appears in paragraph 6, which avers that the association was "required" to collect and distribute information. Regarding the place where the alleged agreement was entered into, the indictment simply avers generally, in paragraph 4, that within the Northern district of Ohio all of the defendants have engaged in a combination in restraint of interstate commerce, viz. "a combination now here described," and which "has unlawfully restrained said trade and commerce, in the manner hereinafter set forth."

[8] After a careful consideration of this case, I am clearly of opinion that the questions that exist regarding the sufficiency of this indictment on the three elements concerning which it is my duty to inquire are of such a doubtful and disputable nature that they belong to the trial court and the appellate tribunals which will or may review the proceedings there had. Demurrers to this indictment and motions to quash were filed by a number of the defendants before the trial court. Judge Westenhaver, in an opinion which I have examined, sustained the sufficiency of the indictment. It is urged that this opinion passed on the indictment simply as a pleading and not as a paper averring certain evidential facts. No doubt an indictment might be insufficient as a pleading for some reason not involved in an inquiry as to its sufficiency in an application for a warrant of removal. But it does not follow that the converse is true, and I think that, upon a demurrer or a motion to quash in a federal court, an indictment which is insufficient on any of the elements involved in an application for removal could not be sustained.

[9] It is further urged that the decision of the learned judge of the trial court is not binding upon this court. That is probably true, but it has very great weight here, as bearing on the probable sufficiency of this indictment. Having regard to the rule that doubtful issues of law and fact in proceedings of this nature are for the trial court, and having regard to the averments contained in this indictment and to Judge Westenhaver's opinion, I think this court would be taking a long and unjustifiable step in refusing to order the removal of these defendants on the ground that the indictment is clearly insufficient on any of the three elements involved in this inquiry. This case furnishes a good illustration of the importance of adherence to the rule that doubtful and disputable questions are for the trial court. Suppose, by way of illustration, that, on applications for the removal of say 20 of the defendants, various District Judges decide that they shall be removed, and that various District Judges decide, as to another 20, that the indictment is insufficient and they shall not be removed. Suppose, then, that a trial and conviction is had in the District Court for the Northern District of Ohio, and the conviction sustained by the Circuit Court of Appeals for the Sixth Circuit, and later by the Supreme Court of the United States. The net result would be that 20 defendants would have escaped trial, because various District Judges had made erroneous decisions as to the sufficiency of the indictment.

It is important, in the interest of protecting individual rights, that no defendant shall be ordered removed for trial to another district, unless a qualified judicial officer shall determine, after examination of the indictment, that due cause for the removal exists. It is equally important, in the interest of an effective administration and enforcement of law, that every judge to whom application for a warrant of removal is made shall not undertake to make his own independent decision on doubtful and disputable questions, but that these shall be raised and determined in the trial court, and reviewed and deter-

mined finally by the appropriate superior judicial authority.

[10] It remains to consider the additional questions. The petition for habeas corpus filed by Hess, McGrath, and Donaghy aver, inter alia, that neither they nor the corporations of which they are alleged to be officers and agents ever entered into the combination described in the indictment. The petition filed by Shaw, in addition to a substantially similar averment, adds that he has not managed, directed, or controlled the affairs and business of the Stanley G. Flagg Company, but has been merely an employee of said company since its incorporation in January, 1923, at a wage averaging $80 a week. The marshal's return to these petitions is in the usual form, and consists of a recital of the proceedings under which the petitioners were taken into custody and, after hearing, again committed to the marshal's custody. At the hearing before the court, none of the petitioners made any offer to prove the averments of the petitions, relying apparently on the general rule that averments in a petition for habeas corpus shall be taken as true unless denied by the return. This involves a misapprehension of the issue raised by a petition for habeas corpus, which is whether or not the petitioner is illegally detained. These petitioners appeared by their counsel before the commissioner. They had the right to submit evidence to him rebutting the prima facie proof contained in the indictment, and, had they rebutted that prima facie proof by evidence that clearly overcame it, it would have been the commissioner's duty to discharge them. They chose, however, to stand mute before the commissioner. Acting on the evidence that was before him, and which, for the reasons I have indicated, I think sufficient, the commissioner committed them. They then filed petitions for habeas corpus, alleging illegal detention, and averred for the first time facts which, if seasonably and clearly proved, would have entitled them to discharge.

[11] As I say, this involves a misapprehension of the issue raised by a petition for habeas corpus in proceedings of this character, and I find nothing in the opinion in Kohl v. Lehlback, 160 U. S. 293, 16 S. Ct. 304, 40 L. Ed. 432, at variance with this view. While considerable discretion as to procedure and the need of further inquiry is vested in the District Courts in applications for removal, I see no reason why the court should reopen this whole matter, and conduct what would probably be a protracted hearing, because of the averments to which I have referred. Indeed, I do not understand that I am asked to do so.

Counsel for the defendant McGrath made an offer before the commissioner to prove that this defendant is 70 years of age, has recently undergone several very serious operations, and that his health is such that it would place his life in jeopardy to go to Cleveland to stand trial. The offer, made by responsible counsel, was very specific and in considerable detail, and was of such a nature as to suggest a real doubt as to whether the defendant McGrath could go to Cleveland and stand trial without jeopardy to his life. The commissioner sustained the government's objection to the offer, on the ground that such evidence could be presented only to the Ohio court.

[12] Without deciding whether the commissioner should have heard that evidence on the issue presented before him, I think that this court should hear it, before issuing a warrant of removal. The occasional relief extended by courts to persons whose physical condition renders it likely that the carrying out of the mandates of the law would place their lives in jeopardy rests upon no principles of law, but springs from instincts of humanity and a well-nigh universal feeling regarding the sacredness of human life. No judge would order a man in extremis to be dragged into court for trial, nor should he order him removed to a distant court for trial. While, for obvious reasons, applications of this character require close scrutiny, caution, and sound discretion, they are not to be ignored or brushed aside. True it is that, if a warrant of removal is issued as to McGrath, he could probably arrange to submit the question of his health to the trial court in advance of trial. This would probably have to be done by deposition. This court is in a position to hear his witnesses, and, I think, should do so.

As to the relators H. Lloyd Hess, Edwin C. Donaghy, and A. E. Shaw, the petitions for writs of habeas corpus are dismissed, and warrants of removal may issue. As to the relator L. J. McGrath, the petition for a writ of habeas corpus is dismissed, but action on the petition for a warrant of removal is postponed, pending a hearing by the court of such evidence as he may wish to offer, bearing on his condition of health.