## UNITED STATES v. ATLANTIC COMMISSION CO., Inc., et al.

### No. 1710.

District Court, E. D. North Carolina, Wilson Division.

May 14, 1942.

---

John W. Aiken and Harold L. Schilz, Sp. Assts. to the Atty. Gen., and J. O. Carr, U. S. Atty., of Wilmington, N. C., for the United States.

R. E. Whitehurst, of New Bern, N. C., for S. M. Jones.

L. I. Moore, of New Bern, N. C., for New Bern Oil & Fertilizer Co. and Hugh S. Swan.

L. Bruce Gunter, of Raleigh, N. C., for Farmer's Cooperative Exchange, Inc., and M. G. Mann.

W. A. Lucas, of Wilson, N. C., and George J. Feldman, of Washington, D. C.,

for Atlantic Commission Co., Inc., and others.

F. E. Kellam, of Norfolk, Va., and Ehringhaus & Ehringhaus, of Raleigh, N. C., for W. T. Phillips and others.

Battle, Winslow & Merrell, of Rocky Mount, N. C., for Thomas P. Thompson and another.

W. R. Ashburn, of Norfolk, Va., and J. Henry LeRoy, of Elizabeth City, N. C., for W. R. Britton and others.

W. R. Ashburn, of Norfolk, Va., and Wade A. Gardner, of Wilson, N. C., for Guy W. Capps.

Rodman & Rodman, of Washington, N. C., for Pamlico Chemical Co. Inc.

Connor & Connor, of Wilson, N. C., and Willcox, Cooke & Willcox, of Norfolk, Va., for Charles F. Burroughs and F. S. Royster Guano Co.

Godfrey Child, of Pocomoke City, Md., for William B. Tilghman, Jr., and others.

Oliver G. Rand, of Wilson, N. C., for Baugh & Sons Co. and G. Allen Ives.

Fred L. Carr, Jr., of Wilson, N. C., for another defendant.

WYCHE, District Judge.

The indictment in the present case was returned by a special Grand Jury for the Eastern District of North Carolina on December 8, 1941. It charges, in the first count, a conspiracy to restrain interstate trade and commerce in potatoes in violation of Section 1 of the Sherman Act, 15 U.S.C.A. § 1; and, in the second count, a conspiracy to monopolize trade and commerce in potatoes in violation of Section 2 of the Sherman Act, 15 U.S.C.A. § 2.

■ Pleas in abatement, motions to quash, demurrers, motions for bills of particulars, and motions for severance and separate trials have been filed by certain defendants. I am satisfied that the allegations of each count of the indictment are sufficient to allege the commission of an offense against the United States and (except as to certain information ordered to be furnished defendants in the form of a bill of particulars during argument on the motions, as will appear from the record thereof) are stated with sufficient particularity to apprise the defendants of the offenses with which they are charged, in accordance with the requirements of the Fifth and Sixth Amendments to the Constitution. United States v. Cruikshank, 92

190

U.S. 542, 23 L.Ed. 588; Johnson v. United States, 4 Cir., 5 F.2d 471; Hill v. United States, 4 Cir., 42 F.2d 812, 814; Martin v. United States, 4 Cir., 299 F. 287, 288.

■ An application for severance and separate trial is addressed to the discretion of the Court, and the general rule is that it is inadvisable to split a case into many parts, to be disposed of piecemeal, in the absence of very strong and cogent reason therefor. This is especially true in conspiracy charges. Dowdy v. United States, 4 Cir., 46 F.2d 417, 421; Tincher v. United States, 4 Cir., 11 F.2d 18, 21; Wood v. United States, 4 Cir., 204 F. 55, 57; Lucas v. United States, 70 App.D.C. 92, 104 F.2d 225, 226; United States v. Fradkin, 2 Cir., 81 F.2d 56, 59. The defendants, Southeastern Chain Store Council, Inc., and Thomas B. Thompson, in their motion for severance predicate most of their argument upon facts contained in an affidavit of the defendants that they are innocent, and that the Government will not be able to prove their guilt. The purpose of a trial is to determine the guilt or innocence of a defendant. It is the duty of the Government to prove at the trial the guilt of these defendants beyond a reasonable doubt, and if it fails so to do the defendants will be acquitted. These defendants do not have the right, any more than any other defendant would have, on this ground, to escape being tried until after their alleged co-conspirators have been convicted. It is my opinion that the reasons advanced for severance and separate trials are not strong enough to require my granting such motions.

By pleas in abatement and motions to quash, the defendants contend that the indictment is invalid because: (1) It was not signed, authorized, or endorsed by the District Attorney for the Eastern District of North Carolina, or any of his duly appointed and authorized assistants, but was signed and prosecuted before the grand jury by a special assistant to the Attorney General and special attorneys appointed under the Act of June 30, 1906, 5 U.S.C.A. § 310, and that such Act is unconstitutional and in violation of the Fifth Amendment to the Constitution. (2) It was based upon incompetent and improper evidence.

The record discloses that the special attorneys were duly appointed, commissioned and qualified as required by the statute, 5 U.S.C.A. §§ 310, 315, and that the District Attorney not only authorized the prosecution, but filed a notification and petition, alleging the necessity of a special grand jury investigation into conditions in the potato industry, upon which Judge Meekins signed an order convening a special term for such purposes. The District Attorney and his assistants assisted in the investigation and prosecution, but did not appear before the grand jury.

■ At the outset it should be noted that a plea in abatement, being a dilatory plea, must be regarded with disfavor by the courts, and every inference must be against the pleader. Olmstead v. United States, 9 Cir., 19 F.2d 842, 845, 53 A.L.R. 1472. Likewise, every possible presumption is in favor of the validity of a statute, and this continues until the contrary is shown beyond a reasonable doubt. In re Sinking Fund Cases (Union P. R. Co. v. United States), 99 U.S. 700, 718, 25 L.Ed. 496, 504; United States v. United States Industrial Alcohol Co., 4 Cir., 103 F.2d 97, 101.

The Act of June 30, 1906, 34 Stat. 816, 5 U.S.C.A. § 310, provides: "The Attorney General or any officer of the Department of Justice, or any attorney or counselor specially appointed by the Attorney General under any provision of law, may, when thereunto specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before committing magistrates, which district attorneys may be by law authorized to conduct, whether or not he or they be residents of the district in which such proceeding is brought."

The constitutionality of this statute appears never to have been attacked, except in the case at bar. The other contentions made by defendants here with respect to the application of the statute have been considered and rejected in several cases. United States v. Sheffield Farms Company, Inc., D.C.S.D.N.Y. Feb. 4, 1942, 43 F. Supp. 1; United States v. Central Supply Association, D.C.N.D. Ohio E.D.1941, 37 F.Supp. 890; Shushan v. United States, 5 Cir., 1941, 117 F.2d 110, 133 A.L.R. 1040; May v. United States, 8 Cir., 1916, 236 F. 495, 499.

United States v. Huston, D.C.N.D. Ohio 1928, 28 F.2d 451, relied on by defendants, involved grand jury proceedings conducted in Ohio by a Special Assistant to the Attorney General appointed to conduct proceedings in Missouri and Minnesota. The court in that case held that, upon a proper

interpretation of the language of his commission, the Special Assistant to the Attorney General was not authorized to conduct proceedings in Ohio. No such question is presented in the present case, inasmuch as the commissions of Government counsel expressly authorize them to conduct grand jury proceedings in the Eastern District of North Carolina. Likewise, In re Confiscation Cases, 7 Wall. 454, 74 U.S. 454, 19 L.Ed. 196; United States v. Crosthwaite, 168 U.S. 375, 18 S.Ct. 107, 42 L.Ed. 507; United States v. Rosenthal, C.C.S.D. N.Y. 1903, 121 F. 862, relied upon by defendants, are not controlling here, since the Act of June 30, 1906, was evidently passed in order to obviate the effect of those decisions.

With respect to the constitutionality of the statute, defendants rely upon the Fifth Amendment to the Constitution of the United States which provides that "no person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, * * *." Defendants contend that an "indictment of a grand jury" under this amendment means an indictment obtained in accordance with the traditional grand jury procedure, at the common law, at the time this Amendment was adopted; and that, therefore, a later Congressional enactment cannot modify that traditional procedure by permitting the presence of prosecuting attorneys on behalf of the Government during the grand jury proceedings.

However, defendants have cited no decisions of any court in support of this novel contention. In United States v. Thompson, 251 U.S. 407, 409, 40 S.Ct. 289, 64 L.Ed. 333, the Supreme Court, although not discussing the question of constitutionality, apparently gave its approval to the practice of appointing Special Assistants to the Attorney General under the Act of June 30, 1906, which was cited by the Court in its opinion. This may be considered as a tacit ruling that the statute was not unconstitutional. United States v. Sloan, D.C., 31 F.Supp. 327, 331.

Furthermore, defendants' contention would prove too much. It would prevent the service as grand jurors of persons who, by reason of sex or race, were not qualified to serve on a grand jury at the time the Fifth Amendment was adopted, and would chain the courts, in the face of greatly changed conditions, to ancient formulæ and would be a denial of the flexibility and capacity for growth and adaptation in the law which is regarded as its "peculiar boast and excellence". Funk v. United States, 290 U.S. 371, 379–383, 54 S.Ct. 212, 216, 78 L.Ed. 369, 93 A.L.R. 1136; Hurtado v. California, 110 U.S. 516, 4 S.Ct. 292, 28 L.Ed. 232; Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240, 57 S.Ct. 461, 81 L.Ed. 617, 108 A.L.R. 1000.

■ Moreover, as has been stated above, this Court should not overthrow a statute enacted by Congress, a coordinate branch of the Federal Government, except in a case where its unconstitutionality is plain and free from doubt. In a doubtful case, and where no authorities in support of their contention that the statute is unconstitutional have been cited by defendants, it is the duty of this Court to uphold the validity of the Act of June 30, 1906, 5 U.S. C.A. § 310.

■ In any event, defendants cannot rely upon the above quoted provision of the Fifth Amendment for the reason that the offense charged in the indictment is not an "infamous crime". Whether a crime is infamous within the meaning of the Fifth Amendment must be determined by the character of the punishment that may be imposed. Imprisonment in a penitentiary is infamous punishment whether it be with or without hard labor. Imprisonment at hard labor in any institution for any definite term is infamous punishment. The test does not depend upon the punishment that is imposed but upon the punishment that can be imposed. The penal provisions of the Sherman Act do not permit imprisonment exceeding one year, nor do they direct imprisonment in a penitentiary or at hard labor. The statute does not embody any specific provision making the particular offense infamous. Consequently, violation of the anti-trust laws, as charged by this indictment, is not an infamous crime, and prosecution could have been by information. Duke v. United States, 301 U.S. 492, 57 S.Ct. 835, 81 L.Ed. 1243; United States v. Sloan, D.C., 31 F.Supp. 327.

It was contended in the Sloan case that the Act of May 14, 1930, 18 U.S.C.A. § 753f, authorized the trial court to designate a penitentiary as a type of institution in which the defendant could be confined, if convicted, thus subjecting him to infamous punishment. However, in that case, it was said that: "The act provides that 'all persons convicted of an offense

against the United States shall be committed, *for such terms of imprisonment and to such types of institutions* as the court may direct, to the custody of the Attorney General of the United States, or his authorized representative, who shall designate,' etc. (Italics added.) It is conceded that the phrase 'for such terms of imprisonment * * * as the court may direct' is subject to the limitation of statutes previously enacted, prescribing specific punishment for violations thereof. If this be true, then it would seem that Congress also intended that the words, 'to such types of institutions as the court may direct' would likewise be subject to the preexisting statute, 18 U.S.C.A. § 695, R.S. § 5541, as construed by the Supreme Court, that a person sentenced to imprisonment for a term not exceeding one year may not be confined in a penitentiary, except where the statute expressly provides punishment by imprisonment in a penitentiary." 31 F. Supp. page 330.

It was also pointed out that "it seems that the purpose of the act was to diminish rather than enlarge the power of the courts". 31 F.Supp. page 331.

Since the date of the Sloan case, Congress has twice amended the Act of May 14, 1930. An amendment on October 21, 1941, 18 U.S.C.A. § 753f, related to juvenile offenders and is not pertinent here. The amendment of June 14, 1941, 18 U.S.C.A. § 753f, deleted the words "and to such types of institutions" following the word "imprisonment" in the first sentence of the statute, and also added the proviso: "Provided, That any sentence of imprisonment for an offense punishable by imprisonment for a term of one year or less shall not be served in a penitentiary except with the defendant's consent." The effect of these modifications is likewise to diminish rather than enlarge the power of the district courts. The proviso, preventing sentence to a penitentiary except with the defendant's consent, clearly invalidates any contention defendants might make that the offense with which they are charged is an infamous crime because punishable by confinement in a penitentiary.

▮ Accordingly, it is my opinion that the specially appointed counsel were authorized to conduct the grand jury proceedings in this case and that the omission of the United States Attorney's signature is merely a formality, which does not invalidate the indictment. Caha v. United States,

152 U.S. 211, 221, 14 S.Ct. 513, 38 L.Ed. 415; Frisbie v. United States, 157 U.S. 160, 163-164; United States v. Sheffield Farms, Inc., D.C.S.D.N.Y. Feb. 4, 1942, 43 F.Supp. 1. However, it is my opinion that it is better practice for the United States District Attorney to sign all bills of indictment.

▮ Proceeding to a consideration of the contention that the indictment was not based upon proper evidence, the weight of authority is opposed to inquiry into proceedings before a grand jury when such proceedings on their face are regular, and the question of the sufficiency or insufficiency, competency or incompetency of the testimony adduced before the grand jury is a matter which the Court has no right to inquire into. The reasons for the rule are sound, and to hold otherwise would lead to endless confusion. There is no federal statute regulating proceedings before a grand jury or specifying the kind and degree of evidence necessary to the finding of a true bill. A grand jury is an informing and accusing body rather than a trial body. Its duty is to inquire and investigate. It is not the function of a grand jury to determine the guilt or the innocence of a person accused of crime. That is the duty imposed upon the petit jury. In order to find a true bill it is necessary only that the grand jury determine from the evidence that the person charged is probably guilty. Its duty is to decide from the evidence offered whether there is prima facie ground for criminal prosecution. United States v. Direct Sales Company, Inc., D.C., 40 F.Supp. 917. While the decisions on this question are not uniform, by far the greater weight of the authorities supports the foregoing conclusions. Even the rule in the State of New York, which is more favorable to the position of defendants than the rule in any other jurisdiction, would not sanction the relief prayed for in the present case. United States v. Gouled, D.C.S.D.N.Y., 253 F. 242, 244; Kastel v. United States, 2 Cir., 23 F.2d 156, 157, 158.

The foregoing conclusions reached in United States v. Direct Sales Company, Inc., supra, applies whether the plea asserting that the indictment is based upon improper evidence alleges that the indictment was found without any legal evidence whatever being produced before the grand jury, or whether it alleges that in-

sufficient, incompetent or improper evidence was presented.

Of course, if a clear and positive showing is made to the effect that the impropriety of the evidence introduced before the grand jury is so flagrant as to constitute gross and prejudicial irregularity and fraud in the conduct of the grand jury proceedings, this Court would be warranted in interposing its authority to prevent injustice. But no such showing has been made here. Although certain newspaper editorials, asserting that potato growers were at the mercy of a monopoly and urging them to take action against it, were offered as grand jury exhibits, it appears that these editorials were produced voluntarily by witnesses in order to explain and justify their own conduct with respect to matters properly under investigation by the grand jury, and that Government counsel cautioned the grand jury to disregard the editorials as evidence. Moreover, such editorials purport merely to express, in forceful language, the general opinion prevalent in the potato-growing regions from which the grand jury was drawn, and which had probably already been read by the members of the grand jury, and I cannot presume that they would have been influenced, to the prejudice of defendants, by such newspaper comment in disregard of their duty to be guided by proper evidence. United States v. Terry, D.C., 39 F. 355, 359–361. As was said in that case: "To set aside an indictment because the jury are informed that one or more persons eminent for their official position or their social standing, or that a considerable number of their fellow-citizens or of the public journals, desire an indictment to be found, would be to adopt a rule which would in very many cases prevent the finding of any indictment whatever." 39 F. page 359.

It is also my view, even if the proceeding before the grand jury constituted gross irregularity, that the plea in abatement should not be sustained, because such irregularities were harmless. As stated above, the indictment does not charge an infamous crime and the defendants, therefore, could have been prosecuted by information.

Finally, motions to quash have been filed, urging that the indictment is duplicitous: First, on the ground that the means and methods used to effectuate the conspiracy are charged as separate indictable offenses;

and, second, that the averment contained in paragraph 10 in Count 1, reincorporated by reference in Count 2, charges also a violation of Section 14 of the Clayton Act, 15 U.S.C.A. § 24. This paragraph states that whenever in the indictment reference is made to an act, deed or transaction on the part of any corporate defendant, such allegation shall be deemed to mean that the officers, agents and employees of said corporation, and its subsidiaries and affiliates, ordered or did such acts for and on behalf of said corporation while actively engaged in the management, direction and control of its affairs.

An analysis of the indictment convinces me that each alleged offense is sufficiently charged. The suggestion of duplicity, in part, appears to rest upon the assumption that each one of the alleged means and methods is charged as a separate indictable offense. The circumstances upon which the defendants rely establish, at the most, that the indictment, in the course of setting forth facts relevant to the offense which has been charged, discloses the commission of other offenses. Those circumstances, however, do not establish that the indictment in each Count charges defendants with having committed more than one offense. An indictment charging only one offense is not duplicitous merely because it discloses in its relevant facts that the defendants have committed an additional offense. In Rowan v. United States, 5 Cir., 281 F. 137, certiorari denied 260 U.S. 721, 43 S.Ct. 12, 67 L.Ed. 481, the Court states the rule: "A count in an indictment is not double, because it charges several related acts, all of which enter into and constitute a single offense, though such acts may in themselves constitute distinct offenses." 281 F. page 139.

The Circuit Court of Appeals for this Circuit has restated the rule in Dowdy v. United States, 4 Cir., 1931, 46 F.2d 417, 420, in a case of conspiracy to violate the prohibition act: "It is first objected that the indictment sets forth several independent and distinct conspiracies. This objection cannot be sustained. The indictment sets forth one conspiracy formed in the Middle District of North Carolina with a number of overt acts to effect the object of that conspiracy. On the face of the indictment, there is nothing to show that there were several distinct conspiracies. The fact that the conspiracy contemplated numerous violations of law as

**194**

its object does not make the indictment duplicitous. The gist of the offense is the conspiracy, and it is single, though its object is to commit a number of crimes."

It is immaterial whether the means and methods alleged were undertaken singularly or in concert because in either case they are alleged to have been in furtherance of the basic conspiracy charged in each Count. It is not necessary that each defendant in a conspiracy case perform the same function or play the same part in effectuating the common design. The activities of some conspirators may be different from those of others, some conspirators may not be known to others, and some may have entered the conspiracy at a different time than others, but all may be partaking in a criminal partnership to accomplish a common result. Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314; Lefco v. United States, 3 Cir., 74 F.2d 66, 68, 69; Silkworth v. United States, 2 Cir., 10 F.2d 711, 717; Schwartzberg v. United States, 2 Cir., 241 F. 348, 352; Capriola v. United States, 7 Cir., 61 F.2d 5, 9; United States v. McConnell, D.C., 285 F. 164, 167; United States v. Direct Sales Co., D.C.S.C., 44 F.Supp. 623, filed April 27, 1942. The means and methods described in each count in the indictment in this case are alleged in support of the charged conspiracy and not as separate crimes. Consequently, on this ground the indictment is not duplicitous. United States v. Swift, D.C.N.D.Ill., 188 F. 92, 97; United States v. King, D.C.Mass., 229 F. 275, 277; Patterson v. United States, 6 Cir., 222 F. 599, 615–617.

Paragraph 10, which it is contended brings into question possible duplicity under Section 14 of the Clayton Act, states that reference in the indictment "to any act, deed, or transaction on the part of any corporate defendant, * * * shall be deemed to mean that the officers, agents, and employees of said corporation, and its subsidiaries and affiliates, ordered or did such act, * * * for and on behalf of said corporation while actively engaged in the management, direction, and control of its affairs." This paragraph of the indictment is merely descriptive. It seems clear from the examination of the indictment and of Section 14 of the Clayton Act that the indictment charges, in each count, a violation of the Sherman Act and does not charge a violation of Section 14 of the Clayton Act.

Section 14 of the Clayton Act, 15 U.S.C.A. § 24, sought to reach the individuals who were responsible for combinations entered into by corporations in restraint of interstate commerce. It provides that: "Whenever a corporation shall violate any of the penal provisions of the antitrust laws, such violation shall be deemed to be also that of the individual directors, officers, or agents of such corporation who shall have authorized, ordered, or done any of the acts constituting in whole or in part such violation, * * *". If the officer or agent is personally charged with participation in the conspiracy there is no necessity for the application of Section 14 of the Clayton Act. It is now well settled that officers and agents may be indicted with their corporation under the Sherman Act. United States v. MacAndrews & Forbes Co., C.C., 149 F. 823; United States v. American Naval Stores Co., C.C., 172 F. 455; United States v. General Motors Corporation, D.C., 26 F. Supp. 353, certiorari denied October 13, 1941, 314 U.S. 618, 62 S.Ct. 105, 86 L.Ed. ——. Inasmuch as officers and agents may be indicted with their corporation under the Sherman Act in a single count and since they are here so indicted, there is no necessity for an application of Section 14 of the Clayton Act. The corporate defendants and the individuals named in the indictment are charged with a conspiracy among themselves to restrain trade and commerce and to monopolize trade and commerce in potatoes. The charge in its entirety is under the Sherman Act.

The history of Section 14 of the Clayton Act shows that it was passed in order to create a method of punishing directors who took part in certain unlawful conduct under the anti-trust laws. Under Section 1 of the Sherman Act, a combination may be charged with entering into contracts to unlawfully restrain trade, apart from the offense of conspiracy. In some of the earlier cases under the antitrust law, individual defendants sought to escape the application of the law on the ground that it was the corporate defendant that had entered into unlawful contracts and that its officers and agents could not be held unless they were shown to have participated in a conspiracy. Union Pacific Coal Co. v. United States, 8 Cir., 1909, 173 F. 737, 745. Section 14 extended the scope of the personal responsibility for acts of corporations in violation of the

anti-trust laws, but it did not create any new specific tests of its own by which violations of the anti-trust laws may be measured, as do some sections of the Clayton Act. Cf. Standard Fashion Co. v. Magrane Houston Co., 258 U.S. 346, 42 S.Ct. 360, 66 L.Ed. 653; United Shoe Machinery Corp. v. United States, 258 U.S. 451, 42 S.Ct. 363, 66 L.Ed. 708.

The contention as to the application of Section 14 was rejected in the General Motors case, supra [26 F.Supp. 355], the Court, stating: "The indictment charges certain individual defendants with conspiring with the other defendants, including corporations in which they are officers. The fact that they are described as officers of the corporations does not mean that their conduct as such officers is complained of, but rather they are charged as individuals, together with the corporations, with violations of the Sherman Anti-Trust Act. This does not render the indictment duplicitous."

Had not the indictment in this case contained the descriptive Paragraph 10, it might have been contended that it was defective in not sufficiently charging with participation in the conspiracy the 17 individual defendants named. In Meehan v. United States, 6 Cir., 1926, 11 F.2d 847, 849, a removal case under an anti-trust indictment for conspiracy to fix prices of malleable steel castings and pipe, a contest was made on the ground that an individual defendant was not sufficiently described in the indictment as having participated in overt acts. The Circuit Court of Appeals held that the use of descriptive language in that indictment similar to that which is found in the indictment now under consideration was "sufficient, either under the general principles involved or section 14 of the Clayton Act." 11 F.2d page 850. See, also, United States v. Mathues, D.C.E.D.Pa.1925, 6 F.2d 149, 153.

No offense under Section 14 of the Clayton Act is charged in the present indictment, and as before stated, the fact that the indictment may disclose that the defendants have committed an additional offense does not make it duplicitous. The indictment specifies in two counts violations of the Sherman Act. To argue that it is duplicitous as charging an additional violation of the Clayton Act is analogous to arguing that it is duplicitous as charg-

ing a violation of the general conspiracy statute, 18 U.S.C.A. 88.

It is my view, for the foregoing reasons, that the indictment is certain and definite and not duplicitous, and the motions to quash on this ground, therefore, should be overruled.

An appropriate order will be filed in accordance with the foregoing conclusions.