v.

**MILK DISTRIBUTORS ASSOCIATION, INC., National Dairy Products Corporation, Cloverland Farms Dairy, Incorporated, The H. E. Koontz Creamery, Inc., Green Spring Dairy, Incorporated, Royal Farms Dairy, Inc., Will's Dairy, Incorporated, Aristocrat Dairy, Penn Dairies, Inc., John M. Lescure, Maurice M. Thomas, George C. Oursler, James J. Ward, Jr.**

Cr. No. 25658.

United States District Court
D. Maryland.
Dec. 29, 1961.

Joseph D. Tydings, U. S. Atty., John R. Hargrove, Asst. U. S. Atty., Baltimore, Md., Lewis A. Rivlin, Antitrust Division of the United States Department of Justice, Washington, D. C., for the Government.

Alva P. Weaver, III, Baltimore, Md., for Milk Distributors Ass'n.

J. Cookman Boyd, Jr., Baltimore, Md., for National Dairy Products Corp.

Nathan Patz, Baltimore, Md., for Cloverland Farms Dairy, Inc.

Richard C. Murray, Towson, Md., for H. E. Koontz Creamery.

David R. Owen, Baltimore, Md., for Green Spring Dairy, Inc.

Nathan Patz, Baltimore, Md., for Royal Farms Dairy, Inc.

William H. Zimmerman, Baltimore, Md., for Will's Dairy, Inc.

Z. Townsend Parks, Jr., Baltimore, Md., for Aristocrat Dairy.

George W. Constable, Baltimore, Md., for Penn Dairies, Inc.

J. Cookman Boyd, Jr., Baltimore, Md., and John T. Chadwell and Richard W. McLaren, Chicago, Ill., for John M. Lescure.

W. Lee Harrison, Towson, Md., for Maurice M. Thomas.

W. Lee Harrison, Towson, Md., for George C. Oursler.

Ward B. Coe, Jr., and G. C. A. Anderson, Baltimore, Md., for James J. Ward, Jr.

R. DORSEY WATKINS, District Judge.

### Question Presented.

By their motion to dismiss the second count of a two-count information, the individual defendants charged therein with violation of the anti-trust laws, for acts done while acting solely in their capacities as officers, directors, or agents who authorized, ordered or did some of the acts constituting in whole or in part the violations alleged also to have been committed by the corporations with which they were associated as officers, directors or agents, have presented the question of whether they *must* be prosecuted under section 14 of the Clayton Act, 15 U.S.C.A. § 24,[1] or *may*, at the option of the Government, be prosecuted either under section 14 of the Clayton Act, or under section 1 of the Sherman Act, 15 U.S.C.A. §§ 1 and 2.[2] Three well-reasoned opinions have reached the conclusion that under the stated circumstances the provisions of section 14 are exclusive, and prosecution of the individuals must be had under that section,

if at all. United States v. National Dairy Products Corp., D.C.W.D.Mo.1961, 196 F.Supp. 155; United States v. A. P. Woodson Company, D.C.D.C.1961, 198 F. Supp. 582; United States v. American Optical Company, D.C.E.D.Wis., oral opinion November 3, 1961, not officially reported. The only law review article brought to the attention of the court considers this result to be correct. Whiting, Antitrust and the Corporate Executive, 47 Va.L.Rev. 929, 945.

This court is in accord with the results reached, and much of the reasoning, in the above-cited opinions. However, as the matter is one of substantial importance which has not been passed upon by any appellate court;[3] as it was thoroughly briefed and argued;[4] and as the Government insists that two points not previously urged have been presented to this court, some further consideration, without undue repetition, seems justified and perhaps required.[5]

### Background.

On March 22, 1961, the United States Grand Jury for the District of Maryland returned a two-count indictment for alleged violation of section 1 of the Anti-trust Laws. Count I attempted to charge certain corporations with engaging, dur-

---

1. Title 15, § 24. Liability of directors and agents of corporation

   "Whenever a corporation shall violate any of the penal provisions of the anti-trust laws, such violation shall be deemed to be also that of the individual directors, officers, or agents of such corporation who shall have authorized, ordered, or done any of the acts constituting in whole or in part such violation, and such violation shall be deemed a misdemeanor, and upon conviction therefor of any such director, officer, or agent he shall be punished by a fine of not exceeding $5,000 or by imprisonment for not exceeding one year, or by both, in the discretion of the court. Oct. 15, 1914, c. 323, § 14, 38 Stat. 736."

2. Title 15, § 1. Trusts, etc., in restraint of trade illegal; exception of resale price agreements; penalty

   "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign na-

   tions, is declared to be illegal * * *."
   Title 15, § 2. Monopolizing trade a misdemeanor; penalty

   "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor, * * *."

3. A direct appeal to the United States Supreme Court, under 18 U.S.C. § 3731, has been taken by the Government in the National Dairy case. Jurisdiction has been accepted; December 18, 1961, sub nomine United States v. Wise, 82 S.Ct. 387.

4. Arguments covered most of two days; five memoranda totaling over ninety pages, legal size, were filed.

5. There is no desire to pile Ossa on Pelion; or simply to escape from being low man on the Totem pole.

ing a period beginning prior to 1946 and ending in 1957, in a combination and conspiracy to suppress and eliminate competition in the sale of milk in the City of Baltimore for use in public schools, in unreasonable restraint of trade and commerce.

Count II attempted to charge the corporations named in Count I, two other corporations, and individuals, with engaging in a similar conspiracy, but with respect to sales' to schools in Baltimore County and Baltimore City, during the spring or early summer of 1959 to the end of that year.

The alleged participation of the individual defendants is set forth in paragraph 16 of the indictment, as follows:

"Each of the individuals listed below in this paragraph, is hereby indicted and made a defendant herein. Each is or has been employed by one or more of the corporate defendants or co-conspirators and has held or now holds the title or position set forth opposite his name. Each of these individual defendants, during the applicable period of the statute of limitations, has been actively engaged in the management, direction, or control of the affairs, policies or activities of the defendant or co-conspirator with which he has been associated and within such period of time has authorized some or all of the acts and things herein charged: * * * ".

The individual defendants moved to dismiss Count II as to them, on the grounds that their alleged participation in the conspiracy charged an offense punishable only under section 14 of the Clayton Act, while the indictment charged them only under section 1 of the Sherman Act.

At the hearing on the motion, the court pointed out what it considered to be certain vagueness and ambiguity in Counts I and II. The Government agreed to revise the allegations in these respects, and to proceed by way of an Information. As, however, the Government indicated that there would be no substantive change in the Information; that the theory of liability of the individual defendants would be the same as that under the indictment; that it was the Government's position that the individual defendants were liable under section 1 of the Sherman Act; and the Government proposed so to proceed, the Government was asked to state, in the nature of a bill of particulars, exactly what was the illegal conduct with which the individual defendants were charged. The reply was:

"The Government states that the defendants, the individual defendants actively and directly engaging in the alleged offenses are alleged to have been acting solely in their capacities as officers, directors or agents who authorized, ordered or did some of the acts constituting in whole or in part the violations alleged also to have been committed by the corporations with which they were associated as officers, directors or agents."

Thereafter, on July 17, 1961, a two-count information was filed, charging violation of "15 U.S.C.A. § 1."

The first count was confined to corporate defendants and a partnership, for the period prior to 1946 to the fall of 1957. Count II included the defendants named in Count I, and added two more corporate defendants, and the individual defendants. Paragraph 16 of the Information is substantially verbatim of paragraph 16 of the Indictment, quoted above.

New motions to dismiss were filed by the individual defendants, again on the ground that the offenses charged against them were alleged to have been done in their representative, not their individual capacities; that they were therefore liable to prosecution only under section 14 of the Clayton Act, and not under section 1 of the Sherman Act.

At the hearing on the motions, the Government agreed with its statement in the nature of a bill of particulars, quoted above, as to the kind of alleged illegal

conduct with which the individual defendants were charged. The court pointed out that from the court's point of view it would have been preferable if this language had been incorporated in the Information. In order that there might be no misapprehension or later dispute, the court stated that it understood the concluding language of paragraph 16 to mean the same as if it read:

"* * * Each of these individual defendants, during the applicable period of the statute of limitations, has been actively engaged in the management, direction, or control of the affairs, policies or activities of the defendant or co-conspirator with which he has been associated and within such period of time *and solely in such representative capacity* has authorized, ordered, or performed some or all of the acts and things herein charged * * *."

The Government agreed that with this modification, the sentence in substance correctly represents the totality of the written and oral statements with respect to the alleged liability of the individual defendants.[6]

### Position of the Parties.

The position of defendants has been adequately heretofore stated.

The position of the Government seems [7] to be that although all that the individual defendants are charged with doing was done by them in a representative capacity, it was of such a character as to impose upon them the liability they would have had, had they been acting as individuals. The Government therefore contends that although the individual defendants are clearly liable under section 14 of the Clayton Act, they are also guilty of violation of section 1 of the Sherman Act; that the Government may proceed under either section; that if it proceeds under section 1 and the evidence fails to suffice for a conviction, the same evidence may justify a verdict under section 14; [8] and that in Count II of the Information it is proceeding under section 1 of the Sherman Act. The Government admits [9] that "it is literally impossible to charge a corporate officer with violating section 1 of the Sherman Act in his official capacity without using the language of section 14 to describe his offense * * *."

In opposition to the motions of the individual defendants to dismiss Count II as to them, the Government contends that:

1. Before the enactment of section 14 in 1914, corporate officials acting in their representative capacity were subjected to criminal prosecution under section 1.

2. Congress did not intend by the enactment of section 14 to relieve corporate officials of responsibility under the Sherman Act.

3. Corporate officials acting in their representative capacity have been subjected to criminal prosecution under the Sherman Act subsequent to the enactment of section 14.

6. Transcript, page 75; September 22, 1961.

7. The court had considerable difficulty in following the Government in what seemed to be varying statements of position, but believes the expressed conclusion to be accurate. Transcript, pages 205–206; 207; Government's Supplementary Memorandum, pages 1–2.

8. The insistence during argument that the very same evidence would be offered to secure a conviction under section 1 or section 14 seemed and seems to the court to involve certain definite, and significant, inconsistencies. If exactly the same evi-

dence is required for a conviction under section 1 and section 14, the coverage of the two sections would seem to be identical. But the Government concedes that a conviction might be obtained under section 14 where it could not be obtained under section 1; claims that it is easier to convict under section 14 than under section 1; and appears to recognize that certain offenses not punishable under section 1 were made criminal by the enactment of section 14. Whether all this is done with mirrors, is not clear. Certainly, like St. Paul, this court sees through the glass darkly.

9. Original memorandum, page 15.

4. In the absence of a showing of prejudice, the information should not be dismissed.

### Discussion.

It seems to be conceded that National Dairy was the first case in which the question of whether an offense within section 14 could also or in the alternative be charged as an offense under section 1 was squarely raised and decided, although in its supplementary memorandum, filed September 6, 1961, the Government contends that the National Dairy and Woodson cases are contrary to the pre-1914 and post-1914 decisions. In its appeal in the National Dairy case (United States v. Wise, Supreme Court of the United States, October Term, 1961), the Government states in its Jurisdictional Statement filed September 10, 1961:

> "This appeal presents an important question of first impression regarding the inter-relationship of section 1 of the Sherman Act and section 14 of the Clayton Act with respect to the criminal liability of corporate officials for antitrust violations committed in the course of their duties."

1. Pre-1914 litigation.

The Government contends that prior to the enactment of section 14 of the Clayton Act in 1914, the decisions made it clear that individual defendants were subjected to liability under the Sherman Act despite the fact that they were acting on behalf of corporate entities, and cites United States v. MacAndrews and Forbes Co., D.C.S.D.N.Y.1906, 149 F. 823, 832, appeal dismissed 1908, 212 U.S. 585, 29 S.Ct. 681, 53 L.Ed. 661; United States v. Winslow, D.C.Mass.1912, 195 F. 578, 581, affd. 1913, 227 U.S. 202, 33 S.Ct. 253, 57 L.Ed. 481; United States v. Swift, D.C.N.D.Ill.1911, 188 F. 92; United States v. Patterson, D.C.S.D.Ohio 1912, 201 F. 697; and Patterson v. United States, 6 Cir.1915, 222 F. 599, in support thereof. The court in National Dairy (196 F.Supp. at 156) cites MacAndrews and Forbes, and Swift, and contrasts them with Union Pacific Coal Co. v. United States, 10 Cir.1909, 173 F. 737 and Nash v. United States, 1913, 229 U.S. 373, 33 S.Ct. 780, 57 L.Ed. 1232, to reach the conclusion that "much doubt and uncertainty existed prior to the enactment of Section 14 of the Clayton Act." This conclusion is also reached in Woodson, 198 F.Supp. at 583–584.

As the distinction between liability for purely personal as distinguished from representative action was not directly raised and decided in the cited cases, it is perhaps justifiable to characterize the situation prior to 1914 as one of "doubt and uncertainty." This court, however, has no doubt or uncertainty that these cases do not make it clear that individual defendants were subjected to liability under the Sherman Act despite the fact that they were acting on behalf of corporate entities.

MacAndrews, principally relied upon by the Government, seems expressly to recognize the distinction. In overruling a demurrer based in part upon the objection that "there is an improper joinder of the corporate and individual defendants" (149 F. at 829) the court said (at page 832):

> "When the statute declares that certain acts notoriously to be accomplished under modern business conditions only through corporate instrumentality shall be misdemeanors, and further declares that the word 'person' as used therein shall be deemed to include corporations, such statute seems to me clearly passed in contemplation of the elementary principle that in respect of a misdemeanor all those who *personally* aid or abet in its commission are indictable as principals. * * * I am compelled to the conclusion that, under this statute [the Sherman Act], *if the officer or agent* of a corporation charged with fault *be also charged with personal participation*, direction, or activity therein, *both* may be so charged in the same indictment." (Emphasis supplied.)

The emphasized language would seem clearly to state that where the corporation is charged with fault and an officer or agent is also charged with *personal* participation (as distinguished from participation in a representative capacity), the corporation and such personal participant may be charged in the same count.

In this connection it may be well to deal with the approach adopted by the Government in its treatment of the pre- and post-1914 cases; which is that the act of an individual, even in a representative capacity, is still his personal act.[10] In a sense this of course is true. The president of a corporation remains an individual and does not become a disembodied spirit upon his election to office. But a president may act on the corporation's behalf—in a representative capacity; or on his own behalf—in an individual or personal capacity. This distinction, obvious to this court, seems recognized in the quotation from Mac-Andrews. One can be *"also* charged with *personal* participation"* only if he could alternatively be charged with a different, e. g. representative, participation.

This distinction, to this court at least, is also clearly recognized in the case given second billing by the Government— the Winslow case. In overruling motions by corporate officials (there was no corporate defendant) to dismiss indictments on the ground that the Sherman Act did not apply to individuals acting solely in their capacities as representatives of the corporation the court said (195 F. at 581–582):

> "It is objected that the respondents are joined as officers of various corporations around which this litigation gathers, that one corporation is the principal, and that the respondents are only officers or directors thereof. *The indictment, however, expressly charges them as actors,* and two fundamental prin-

ciples are thoroughly settled. One is that neither in the civil nor the criminal law can an officer protect himself behind a corporation where he is the *actual, present, and efficient actor;* and the second is that all parties active in promoting a misdemeanor, whether agents or not, are principals. *The rule distinguishing between directors of a corporation who are simply charged as such* and directors acting an *immediate, special part in the proceedings* in question, was pointed out and settled by the Circuit Court of Appeals for this circuit in National Cash Register Company v. Leland [1 Cir.], 94 F. 502, 508, 509, * * *."* (Emphasis supplied.)

The Swift case is not inconsistent with the foregoing. To the objections by the individual defendants that they were officers of corporations and could not be held liable for corporate acts without knowledge, connivance and direction, the court said (188 F. at page 98):

> "* * * The answer to this is found in the indictment, which charges, not that the corporations, but that the groups of individual defendants, did what was alleged to be unlawful; and further, that the defendants managed and controlled the various corporations, and directed the corporate action. More was not necessary."

In the Patterson case, there was no corporate defendant. The individuals were charged with control and direction of National Cash Register Company and with conscious participation in the conspiracy. 201 F. at pages 700, 718, 719, 726; 222 F. at pages 611, 612, 613.

2. The purpose of section 14 of the Clayton Act.

Whether or not section 14 of the Clayton Act was passed to remove ambiguities as to the status of representative

---

10. Subject perhaps to duress—see Mac-Andrews, 149 F. at page 832—acting "under a species of corporate coercion, for which they should not be held personally responsible"—, or perhaps mental incapacity (or the present fetish, "irresistible impulse"?).

conduct under the Sherman Act, it is a not unreasonable assumption that it was passed for a purpose, and did at least enlarge the criminal responsibility of corporate officials. Even the Government, after some apparent vacillation, seems so to concede. The question is— what are the purpose and effect of the legislation—does it merely supplement the then existing law, and if so how, and to what extent; or does it take over a field previously occupied. In answering this question, this court has derived little help from the legislative history. See the review, 198 F.Supp. at pages 584–585; 196 F.Supp. at page 157; 47 Va.L. Rev. at pages 946–947, footnotes 65 and 66. It would be remarkable if in long-extended remarks, something could not be found to support any view.

■ Even the characterization of section 14 as the "personal guilt" section is ambiguous. The "guilt" imposed may be relationary, rather than "personal." Perhaps this nomenclature was intended to emphasize the corporate liability under section 1, and the personal liability under section 14.[11] But this can be at most a matter of poor shorthand; for 15 U.S. C.A. § 2 applies to every "person" (which includes corporations); and this court entertains no doubt that a person who as an individual engaged in the conduct condemned by the Sherman Act was and is amenable to prosecution under it.

■ This court is of the opinion that section 14 intended to do exactly what it says—to provide that corporate violation of the antitrust laws "shall be deemed to be also that of the individual directors" etc. who shall have authorized, ordered or done any of the acts constituting such violation; and that in such cases, the liability of the directors, etc. is exclusively under section 14. However, where the individual defendant is an official of a corporation, but acts independently of that capacity, to refer to him as a director, etc. is simply descriptio personarum, and does not relieve him of liability under the Sherman Act.

This court believes this approach to be consistent with ordinary rules of statutory construction; and to have an additional advantage.

■ (a) Where the language of a statute is clear, it is conclusive. Osaka Shosen Kaisha Line v. United States, 1936, 300 U.S. 98, 101, 57 S.Ct. 356, 81 L.Ed. 532. The language of section 14 is clear and mandatory. It is used in the information in question.

■ (b) If liability when acting in a representative capacity were co-existent in section 1, there would have been no need for section 14. "There is a presumption against a construction which would render a statute ineffective or inefficient * * *." Bird v. United States, 1902, 187 U.S. 118, 124, 23 S.Ct. 42, 44, 47 L.Ed. 100.

■ (c) "Specific terms prevail over the general in the same or another statute which otherwise might be controlling." D. Ginsberg & Sons v. Popkin, 1932, 285 U.S. 204, 208, 52 S.Ct. 322, 323, 76 L.Ed. 704.

(d) If sections 1 and 14 each cover representative liability, the Government would presumably be at liberty to choose which section would be invoked—a potential difference in liability of $45,000 per count. If section 14 is exclusive as to persons acting in a representative capacity, the overtones implicit in Berra v. United States, 1956, 351 U.S. 131, 76 S.Ct. 685, 100 L.Ed. 213 are avoided.

3. Post-1914 cases.

The Government contends that in cases subsequent to the enactment of the Clayton Act, courts have consistently refused

---

11. In oral argument the Government contended that officers of unincorporated associations have been convicted of violation of section 1 of the Sherman Act. There is no contention, however, that any objection was made on the ground that section 1 did not apply to them. But the question before this court is the coverage of section 14 of the Clayton Act, referring to the liability of *corporate* officers. The court has concluded that as to them, section 14 is applicable and exclusive. It need decide no more.

to dismiss indictments under the Sherman Act when individuals have been charged with doing acts pursuant to their duties as corporate officials, citing United States v. Atlantic Commission Co., D.C. E.D.N.C.1942, 45 F.Supp. 187; United States v. National Malleable and Steel Castings Co., D.C.N.D.Ohio 1924, 6 F.2d 40; United States ex rel. McGrath v. Mathues, D.C.E.D.Pa.1925, 6 F.2d 149, 153; Meehan v. United States, 6 Cir. 1926, 11 F.2d 847.

Before analyzing these cases, there are two important preliminary considerations. First, until 1955 the penalties under section 1 and section 14 were identical. It therefore was not too important to distinguish between the sections; and if, as the Government contends, its burden under section 14 is lighter, it would perhaps have been inexpedient for a defendant to raise the point if the charge were under section 1.

▮ Secondly, even if there had been a uniform practice of indicting under section 1 for conduct in a representative capacity, the absence of challenge would not estop a defendant from raising this point in a later case. See Boyd v. Alabama, 1876, 94 U.S. 645, 648, 24 L.Ed. 302.

To this court, the Atlantic Commission case is a direct recognition that while if an "officer or agent is personally charged with participation in the conspiracy there is no necessity for the application of Section 14 of the Clayton Act," the converse is equally true. The language of the court is as follows (45 F.Supp. at 194):

"* * * It seems clear from the examination of the indictment and of Section 14 of the Clayton Act that the indictment charges, in each count, a violation of the Sherman Act and does not charge a violation of Section 14 of the Clayton Act.

"Section 14 of the Clayton Act, 15 U.S.C.A. § 24, sought to reach the individuals who were responsible for combinations entered into by corporations in restraint of interstate commerce. It provides that: 'Whenever a corporation shall violate any of the penal provisions of the antitrust laws, such violation shall be deemed to be also that of the individual directors, officers, or agents of such corporation who shall have authorized, ordered, or done any of the acts constituting in whole or in part such violation, * * *'. *If the officer or agent is personally charged with participation in the conspiracy there is no necessity for the application of Section 14 of the Clayton Act.* It is now well settled that officers and agents may be indicted with their corporation under the Sherman Act. United States v. MacAndrews & Forbes Co., C.C., 149 F. 823; United States v. American Naval Stores Co., C.C., 172 F. 455; United States v. General Motors Corporation, D.C., 26 F.Supp. 353, certiorari denied October 13, 1941, 314 U.S. 618, 62 S.Ct. 105, 86 L.Ed. [497]. Inasmuch as officers and agents may be indicted with their corporation under the Sherman Act in a single count and since they are here so indicted, there is no necessity for an application of Section 14 of the Clayton Act. The corporate defendants and the individuals named in the indictment are charged with a conspiracy among themselves to restrain trade and commerce and to monopolize trade and commerce in potatoes. The charge in its entirety is under the Sherman Act." (Emphasis supplied.)

Of real significance is the reliance of the court in the Atlantic Commission case upon General Motors. In that case both individuals and corporations were charged with conspiracy in restraint of trade. The individuals claimed that the indictment was duplicitous in charging violations of both the Sherman Act and section 14 of the Clayton Act. The court disposed of the demurrer in the following language (26 F.Supp. at page 355):

"The indictment charges certain individual defendants with conspiring with the other defendants, including corporations in which they are officers. *The fact that they are described as officers* of the corporations *does not mean that their conduct as such officers* is complained of, but rather that *they are charged as individuals*, together with the corporations, with violations of the Sherman Anti-Trust Act. This does not render the indictment duplicitous." (Emphasis supplied.)

In National Malleable the court referred to the charge against the corporate and individual defendants as "a combination or conspiracy in restraint of interstate trade, in violation of section 1, Act of July 2, 1890, commonly known as the Sherman Anti-Trust Act * * *." (6 F.2d at pages 40–41). The court then states that the charge against the individual defendants is "sufficiently averred, within the authorities and within the terms of section 14, Act of October 15, 1914, known as the Clayton Act * * *. If the allegations of the indictment are proved, each and all of the defendants are guilty of a violation of section 1 of the Sherman Act." (6 F.2d at page 41).

In Mathues, a case growing out of the same indictment, the court seems to consider the indictment as charging a crime under section 14. (6 F.2d at page 153.)

When the same indictment was considered on appeal, the court held it "sufficient, either under the general principles involved or under section 14 of the Clayton Act." (11 F.2d at page 850.) This seems to repel the attack of lack of sufficiency on any ground, by holding the indictment sufficient on one or the other of two possible grounds; that is, sufficient on some ground. It is unlikely that an appellate court was equating "both * * * and" with "either * * * or."

To this court the most significant language, prior to the 1961 decisions, is that found in Hartford-Empire Co. v. United States, 1945, 323 U.S. 386, 65 S.Ct. 373, 89 L.Ed. 322. The court, in reviewing injunctions issued against individual defendants, who were corporate officers, drew a sharp distinction between acts performed by individuals, acting on their own account, and when acting in the name of, or on behalf of, a corporate defendant. The court said (323 U.S. at pages 433–434, 65 S.Ct. at page 396):

"A word should be said concerning the inclusion in many paragraphs of the decree, and in many of the injunctions imposed, of various individual defendants who in the past have acted as, and who at present are, officers or directors of the corporate defendants. *They offended against the antitrust laws by acting on behalf of, or in the name of, a corporate defendant.* There are no findings, and we assume there is no evidence, that any of them have applied for, owned, dealt in, and licensed patents appertaining to the glassware art. *Nor is there evidence or finding that, as individuals acting for their own account, any of them, as a principal, has entered into any of the arrangements found unlawful by the court.*" (Emphasis supplied.)

The court held that there was no necessity to include in the injunctions the individual defendants who had acted solely in a corporate capacity. The court said (323 U.S. at pages 434–435, 65 S.Ct. at page 396):

"That these individuals may have rendered themselves liable to prosecution by virtue of the provisions of § 14 of the Clayton Act is beside the point, since relief in equity is remedial, not penal."

This court accordingly concludes that the post-1914 decisions are not inconsistent with its conclusion that section 14 of the Clayton Act is exclusive as to charges against individuals in their representative capacities.

4. Prejudice.

The Government in substance contends that defendants can sustain no prejudice from failure to be charged under section

14, "until they have requested and been refused an instruction under section 14 which is more favorable to them than the section 1 instruction proposed by the Government;" and that if defendants have been improperly charged under section 1, this is a mere miscitation, covered by F.R.Crim.P. 7(c), 18 U.S.C.A. As to the latter, the reference in the information to section 1 of the Sherman Act is not a typographical error or the result of mere inadvertence; it is a deliberate citation, after full discussion, and is in the nature of a calculated risk. This court agrees with the decision in the Woodson case that under the Government's contention, Count II of the Information would be duplicitous as to the individual defendants. 198 F.Supp. at page 586.

On the more general ground of lack of prejudice until it is time to charge the jury, this court is of the opinion that a defendant is entitled at all times after the return of an indictment or the filing of an information to know the exact charge he must face. In this particular case a defendant, although completely innocent, might because of ill health, the expense of litigation, or the notoriety incident to a trial, be desirous of tendering a plea of nolo contendere if the maximum possible fine was $5,000; not if it was $50,000.

Moreover, one of the defendants was an officer in a now dissolved corporation, which corporation is not a defendant in the information. Interesting questions of proof as to the violation by that corporation of the penal laws, a condition precedent to his conviction under section 14 but not under section 1, may arise.[12] This defendant's preparation for trial might well differ materially, dependent upon the crime with which he is charged.

Count II of the information expressly and advertently charges the individual defendants with a violation of section 1 of the Sherman Act. The court is of the

opinion that under the allegations of the information, the individual defendants are not subject to prosecution under that section. Their motion to dismiss Count II as to them is granted. An appropriate order will be signed upon presentation.

---

12. In a proceeding against such defendant under section 14, must the Government prove the violation by his corporation beyond a reasonable doubt, or only by a preponderance of the evidence?